[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT CHRISTINE GARDNER'S MOTION TO DISSOLVE LIS PENDENS DATED APRIL 11, 2001, AND ON THE PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY DATED JUNE 5, 2001
I. BURDEN OF PROOF
In order to obtain a prejudgment remedy pursuant to General Statutes §§ 52-278a et seq., the plaintiff must show probable cause to sustain the validity of his claim. See General Statutes § 52-278d (a). It is clearly the plaintiff who bears the burden of establishing both the probability that the defendants are liable under one or more of the claims alleged and the probable amount of his damages. See, e.g., Mullai v.Mullai, 1 Conn. App. 93 (1983). Furthermore, in considering the facts before it, the Court must take into account any defenses, such as the statute of limitations, asserted by the defendants. General Statutes § 52-278d (a); Roberts v. Caton, 224 Conn. 483, 487 n. 4 (1993);Augeri v. C.F. Wooding Co., 173 Conn. 426, 429 (1977); L. Suzio ConcreteCo., Inc. v. Salafia, 3 Conn. App. 404, 407-08 (1985).
The plaintiff bears the same burden of proof, to establish probable cause for his claim in regard to the motion to dissolve the lis pendens. "Upon the hearing held on [the motion to dissolve the notice of lis pendens], the plaintiff shall first be required to establish that there is probable cause to sustain the validity of his claim. . . ." General Statutes § 52-325b (a); see also Dunham v. Dunham, 217 Conn. 24, 36
(1991), overruled on other grounds, 239 Conn. 207, 213 (1996) ("if probable cause is contested . . . [the statute] assigns the burden of CT Page 13946 proof on this issue to the lis pendens claimant"); Sanstrom v.Strickland, 11 Conn. App. 211, 212 (1987) ("the plaintiff is initially required to establish probable cause to sustain the validity of his claims").
In making its determination, the court must determine, in light of the legal issues and the credibility of the witnesses, whether the plaintiff has shown probable cause to sustain the validity of his claim. Nash v.Weed Duryea Co., 236 Conn. 746, 749, 674 A.2d 849 (1996). Probable cause is nothing more than a bona fide belief on the existence of facts essential under the law for the action, such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, to entertain it. New England Land Co. Ltd. v. DeMarkey, 213 Conn. 612, 620,569 A.2d 1098 (1990); Three S. Development Co. v. Santore, 193 Conn. 174,175, 474 A.2d 795 (1984). Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. Id. It is not necessary for the plaintiff to prove the case by a fair preponderance of the evidence at the probable cause stage.McCahill v. Town Country Associates, Ltd., 185 Conn. 37, 39, 440 A.2d 801
(1981); Augeri C.F. Wooding Co., 173 Conn. 426, 428-29, 378 A.2d 538
(1977). A prejudgment remedy proceeding "is not contemplated to be a full scale trial on the merits," and "it does not lead to a final decision in any sense." (internal quotations omitted.) Babiarz v. Hartford Special,Inc., 2 Conn. App. 388, 393, 480 A.2d 561 (1984). In making its determination of probable cause, the court may consider both facts set forth in the plaintiff's affidavit and facts presented at the hearing.McCahill, supra, 185 Conn. 39; Fleet Bank of Connecticut v. Dowling,28 Conn. App. 221, 225, 610 A.2d 707 (1992), appeal dismissed,225 Conn. 447, 623 A.2d 1005 (1993). The probable cause standard applies not only to the factual issues, but to the legal issues as well.
See Bank of Boston Connecticut v. Schlesinger, 220 Conn. 152, 156,595 A.2d 872 (1991). Thus, the legal conclusions supporting the plaintiff's claim need have only a reasonable basis, even though a plenary review might ultimately yield a different result. Babiarz v. HartfordSpecial, Inc., supra, 2 Conn. App. 394. In ruling on an application for a prejudgment remedy, the court must consider any defenses raised. Conn. Gen. Stat. § 52-278d(a)(1). In order for a defense to prevent the granting of a prejudgment remedy, it must be sufficiently clear and factually and legally simple so as to show a lack of probable cause for the validity of the plaintiff's claim. Babiarz, supra, 2 Conn. App. 393. (holding that issue of ERISA preemption was not simple and that legal authority relied upon by trial court supplied a reasonable basis for its decision). See also NAB Asset Venture III, LP. v. Parrella, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 1500247 (Dec. 10, 1996, Lewis, J.) (although recognizing that a different CT Page 13947 result could ensue when statute of limitations issues were fully explored at trial, court held that plaintiff had shown probable cause to sustain validity of its claim); Housatonic Bank Trust Co. v. Jaser, Superior Court, judicial district of Ansonia/Milford, Docket No. 033488 (October 25, 1990, Fuller, J.) ("[w]hile a clear, factually and legally simple defense may defeat a PJR . . ., the trial court is not supposed to make a full and final decision on factually and legally complex issues at a PJR hearing").
II. CONSTITUTIONAL ISSUES
The defendant, Christine Gardner, alleges that the Connecticut lis pendens statute is unconstitutional under the circumstances of this case, while at the same time acknowledging in her Memorandum of Law dated June 6, 2001, that the Connecticut Supreme Court, in 1983, upheld the constitutionality of that statute in Williams v. Bartlett, 189 Conn. 471, appeal dismissed, 464 U.S. 801, 104 S.Ct. 46, 78 L.Ed.2d 67 (1983). She argues that the Williams case is of dubious precedential value in light of the subsequent decision of the U.S. Supreme Court in Connecticut v.Doehr, 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991). The defendant's position is that the Doehr case "compels the conclusion that the failure of the Connecticut lis pendens statutes to provide for notice and the opportunity for a judicial hearing before a notice of lis pendens may be placed on a defendant's property, renders the statutory procedure constitutionally deficient."
The U.S. Supreme Court dismissed the appeal in the Williams case "for want of a substantial federal question." This U.S. Supreme Court Order is a disposition on the merits.
 As Mr. Justice Brennan once observed, "[v]otes to affirm summarily, and to dismiss for want of a substantial federal question, it hardly needs comment, are votes on the merits of a case. . . ." Ohio ex rel. Eaton v. Price, 360 U.S. 246, 247
(1959); cf R. Stern E. Gressman, Supreme Court Practice 197 (4th ed. 1969) ("the Court is, however, deciding a case on the merits, when it dismisses for want of a substantial question . . ."); C. Wright, Law of Federal Courts, 495 (2d ed. 1970) ("Summary disposition of an appeal, however, either by affirmance or by dismissal for want of a substantial federal question, is a disposition on the merits"). The District Court should have followed the Second Circuit's advice, first, in Port Authority Bondholders Protective Committee v. Port of New York Authority, CT Page 13948 387 F.2d 259, 263 n3 (1967), that "unless and until the Supreme Court should instruct otherwise, inferior federal courts had best adhere to the view that if the Court has branded a question as unsubstantial, it remains so except when doctrinal developments indicate otherwise"; and, later, in Doe v. Hodgson, 478 F.2d 537, 539, cert denied sub nom. Doe v. Brennan, 414 U.S. 1096
(1973), that the lower courts are bound by summary decisions by this Court "`until such time as the Court informs [them] that [they] are not.'"
Hicks v. Miranda, 422 U.S. 332, 344-45 (1975), 95 S.Ct. 2281,45 L.Ed.2d 223, 236.
With respect to the deference this court must show to the Williams
case, the law is clear.
 It is axiomatic that a trial court is bound by Supreme Court precedent. See Martin v. Plainville, 40 Conn. App. 179, 182, 669 A.2d 1242 (1996) (Appellate Court, as intermediate court, is prevented from reexamining or reevaluating Supreme Court precedent); Brunswick v. Inland Wetlands Commission, 25 Conn. App. 543, 553, 596 A.2d 463 (1991), rev'd on other grounds, 222 Conn. 541, 610 A.2d 1260 (1992) (same); Board of Education v. Bridgeport Education Assn., 9 Conn. App. 199, 203-204, 518 A.2d 394
(1986), cert. denied, 202 Conn. 802, 519 A.2d 1206
(1987) (same); see also O'Connor v. O'Connor, 4 Conn. App. 19, 20, 492 A.2d 207 (1985), rev'd on other grounds, 201 Conn. 632, 519 A.2d 13 (1986) (same). This principle is inherent in a hierarchical judicial system. In the present case, it is undisputed that the trial court determined that under existing case law the plaintiffs had standing to appeal because they were taxpayers appealing from a zoning decision involving premises concerned with the sale of liquor and, therefore, were considered to be automatically aggrieved. The trial court refused to follow the precedent compelling this conclusion, however, because the court disagreed with our existing interpretation of the phrase "aggrieved person" as set forth in § 8-8 (a). See footnote 1. Although the concerns raised by the trial court might ultimately have merit and support its contention that the time has come to reconsider the propriety of the automatic aggrievement CT Page 13949 rule, revision of Supreme Court precedent is not the trial court's function.
Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 195 (1996).
It may be that someday the Connecticut Supreme court will reconsider the propriety of its holding in Williams in light of Doehr, but this court will not usurp that function.
The court's necessary conclusion is that the Defendant, Christine Gardner, has failed to establish that the Connecticut Lis Pendens statute is unconstitutional under the circumstances of this case.
III. OTHER LEGAL ISSUES
 A. Breach of Contract
It is fundamental that the essential elements of a cause of action for breach of contract are: (1) the existence of a contract or agreement; (2) a breach thereof; and (3) damages resulting from the breach.
 A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction.
Lawson v. Whitey's Frame Shop, 241 Conn. 678, 686 (1997).
B. Fraud
 "Fraud consists [of] deception practiced in order to induce another part with property or surrender some legal right, and which accomplishes the end designed. . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." (Internal quotation marks omitted.) Muller v. Muller, 43 Conn. App. 327, 337-38, 682 A.2d 1089 (1996). "Additionally, [t]he party asserting such a cause of action must prove the existence of the first three of [the] elements by a standard higher than the usual fair preponderance of the evidence, which higher CT Page 13950 standard we have described as `clear and satisfactory' or `clear, precise and unequivocal.'" (Internal quotation marks omitted.) Anastasia v. Beautiful You Hair Desians, Inc., 61 Conn. App. 471, 477, 767 A.2d 118
(2001).
 "Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways. They present, however, issues of fact.
Giulietti v. Guilietti, 65 Conn. App. 813, 836-837 (2001).
C. FRAUDULENT CONVEYANCE
 General Statutes § 52-552e provides that a transfer is fraudulent "if the creditor's claim arose before the transfer made the transfer with an "intent to hinder, delay or defraud any creditor of the debtor. . . ." "`Creditor' means a person who has a claim." General Statutes § 52-552b(4). "`Claim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated. fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." General Statutes § 52-552b(3).
The above statute also provides that one of the remedies a creditor may obtain is an attachment. General Statutes 52-552h (a)(2).
IV. FACTS
After reviewing the oral evidence elicited in this case and the various exhibits, along with the submissions by counsel, and having evaluated the credibility of the witnesses, the court finds that the plaintiff has established probable cause to sustain the validity of at least one of his claims and of damages. The court is cognizant that probable cause is defined in Connecticut law as it is used in our prejudgment remedy statutes (and in our lis pendens statutes), as follows:
 Because DeMarkey has appealed, pursuant to General Statutes § 52-2781, from an adverse ruling on his motion to dissolve or vacate a prejudgment remedy order, we first must determine the scope of our review, "We have recently examined the trial court's function in considering an application for prejudgment remedy of attachment: `The language of our prejudgment CT Page 13951 remedy statutes; General Statutes § 52-278a et seq.; requires that the court determine "whether or not there is probable cause to sustain the validity of the plaintiff's claim"; General Statutes § 52-278d
(a); that is to say "probable cause that judgment will be rendered in the matter in favor of the plaintiff." General Statutes § 52-278c (a)(2). "The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." Wall v. Toomey, 52 Conn. 35, 36 (1884). Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. Ledgebrook Condominium Assn., Inc. v. Lusk Corporation, 172 Conn. 577, 584, 376 A.2d 60 (1977). The court's role in such a hearing is to determine probable success by weighing probabilities. Michael Papa Associates v. Julian, 178 Conn. 446, 447, 423 A.2d 105 (1979).' Three S. Development Co. v. Santore, 193 Conn. 174, 175-76, 474 A.2d 795 (1984); see also Babiarz v. Hartford Special, Inc., 2 Conn. App. 388, 393, 480 A.2d 561 (1984)." Soloman v. Aberman, 196 Conn. 359, 362-63, 493 A.2d 193
(1985).
New England Land Co., Ltd. v. DeMarkey, 213 Conn. 612, 619-620, (1990).
The court concludes that there is probable cause that judgment will be rendered in favor of the plaintiff. This conclusion is based on the court's belief in the existence of the following facts:
1. Mr. Gardner uncovered what he considered to be an business excellent opportunity in the Delta parts deal, and he badly needed Mr. Donegan's expertise and experience in order to cash in on it.
2. The plaintiff and the defendant William Gardner entered into an oral agreement in which Donegan would assist in the formation of Avatar with CT Page 13952 the accrual to him of $30,000.00 per month until the entity was created and funding obtained. The accrual was to be part of the `Mobilization Funding' that was to be provided to get Avatar started.
3. Under this agreement Donegan provided services for eleven months from May, 1994 to April 1995, and therefore was entitled to $330,000 plus $12,827.00 benefits in accord with the terms of the oral agreement.
4. There were no contingencies attached to Donegan's personal right to reimbursement from the mobilization funding.
5. The May 1996 $1,000,000 transfer of the `Mobilization Funds to Christine Gardner, which included approximately $343,000 owed to Donegan, was a fraudulent transfer, and the funds were used for the down payment on her house in Southport, Connecticut.
6. From early 1995 and continuing for several years, Gardner falsely represented to Donegan the amount of compensation he had taken, was taking and intended to take. During this period Gardner concealed from Donegan the fact that, contrary to their agreement, he was drawing substantially more funds than was Donegan.
7. The parties agreed to share equally in the incentive fees; in contravention of this agreement only Gardner received such fees.
8. Defendant's statute of limitations defenses are not sufficiently clear and factually and legally simple so as to show a lack of probable cause for the validity of the plaintiff's claim.
V. CONCLUSIONS:
The plaintiff has sustained his burden of establishing both the probability that the defendants are liable under one or more of the claims alleged, and the probable amount of his damages. With respect to the claims alleged he has established probable cause as to Count Two (Fraud), Count Four (Fraudulent Conveyance), and Count Five (Breach of Contract).
As to damages, the plaintiff has established probable cause that he is entitled to a prejudgment remedy of $519,952.00 ($342,827 plus $177,125 prejudgment interest) against Christine Gardner (Count Four), and to $2,482.952. ($1,250,000 plus $250,000 prejudgment interest for underpayment of promised compensation between April, 1995 and the summer of 1998, plus $331,000 incentive fees plus $132,000 — prejudgment interest, plus the $519,952) against William Gardner, (Counts Two and Five). CT Page 13953
The court denies the defendants' Motion To Dissolve Lis Pendens, grants the plaintiff's Application For Prejudgment Remedy against the defendant, Christine Gardner, in the amount of $519,952 and grants the plaintiff's Application For Prejudgment Remedy against the Defendant, William J. Gardner, in the amount of $2,482,952.
Walsh, J.